## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMERSON McCAULEY, | : | CIVIL ACTION NO. 3:CV-12-2386 |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIROSA LAMAS, | : | |
| | : | |
| Respondent | : | |

## MEMORANDUM

Petitioner, Emerson McCauley, an inmate currently confined in the Rockview

State Correctional Institution, Bellefonte, Pennsylvania, filed the instant petition for

writ of habeas corpus pursuant to 28 U.S.C. §2254.  He attacks a conviction

imposed by the Court of Common Pleas for Juniata County, Pennsylvania. (Doc. 1).

A response (Doc. 32), supplemental response (37) and traverses (Docs. 34, 38)

having been filed, the petition is ripe for consideration.  For the reasons that follow,

the Court will dismiss the petition as untimely.

## I.    **Background**

A portion of the factual and procedural background of this case has been

extracted from the Pennsylvania Superior Court's November 8, 2010 Memorandum

Opinion affirming the denial of McCauley's post conviction relief act (PCRA)

petition.  (See Doc. 31-15 at 2-5, Memorandum Opinion).

> Appellant, Emerson Glenn McCauley, appeals from the order denying his request for post conviction relief,[1] based upon the results of the DNA testing performed on evidence introduced by the Commonwealth during the 1989 trial of appellant on charges of murder, kidnapping, robbery, and rape.  At the conclusion of that trial appellant was convicted of one count of murder of the second degree, and sentenced to a term of life imprisonment.  We affirm the order of the trial court denying the requested relief.
>
> This case has been before this Court on two prior occasions, and we need not here exhaustively recite the underlying facts. For present purposes it is enough to recount that appellant was found to have participated in heinous acts committed on June 25, 1977, when a twenty-one year old woman, who had been on her way home from her job in State College, Pennsylvania, was cruelly abducted, raped, robbed and thrown off a bridge to her untimely death. At that time, appellant was seventeen years old.
>
> Due to the difficulties in identifying the victim's assailants,[2] appellant was not charged with these crimes for more than a decade, and the trial in this case did not occur until 1989. The trial concluded on February 15, 1989, when the jury returned a verdict on a single charge of murder

---

[1] Appellant's claim for post conviction relief was filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-9546.

[2] At one point during the police investigation of this case, one prime suspect committed suicide when he discovered that the police were seeking information regarding his participation in the crime.  The third suspect has yet to be arrested.

of the second degree.[3]  Appellant was thereafter sentenced to serve a term of life imprisonment, and this Court affirmed this judgment of sentence.  <u>Commonwealth v. McCauley</u>, 588 A.2d 941 (Pa. Super. 1991), <u>appeal</u> <u>denied</u>, 529 Pa. 656, 604 A.2d 248 (1992).

(<u>See</u> Doc. 31-15 at 2-5, Memorandum Opinion).

On March 5, 1992, McCauley filed a *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §9541 et seq. (Doc. 31-6 at 2, PCRA Court Memorandum dated February 17, 1995).  Following the appointment of counsel ("PCRA counsel 1"), McCauley filed amendments to his PCRA claims ("the first PCRA petition"). <u>Id</u>.  Among the six main claims raised at that time was the allegation that trial counsel rendered constitutionally defective assistance because he failed to request DNA analysis of the semen, prostate gland enzymes, and hair collected from the victim's body.  <u>Id</u>.  By Memorandum dated February 17, 1995, the PCRA Court dismissed Petitioner's *pro se* and amended motion for PCRA relief, without a hearing.  <u>Id</u>.

By Memorandum Opinion dated December 15, 1995, the Pennsylvania

---

[3]The Office of the Pennsylvania Attorney General prosecuted the case on behalf of the Commonwealth, and presented evidence including (1) two inculpatory police-recorded statements given by the appellant, (2) testimony of a jailhouse snitch who stated the appellant had provided him details of the murder, (3) the grand jury testimony of a former girlfriend of appellant, who had testified that appellant had confessed to her his participation in the crime, and (4) the testimony of a "criminalist" who testified that a hair recovered from the victim's body belonged to appellant.

Superior Court issued a non-precedential opinion that affirmed the denial of PCRA

relief.  (Doc. 31-9 at 2-6, Superior Court Memorandum Opinion dated Dec. 15,

1995). The Court explicitly rejected McCauley's two-fold argument, which was that

he was entitled to relief because: (1) DNA testing would have exonerated him of

rape; and (2) rape was an essential element of the second-degree murder count.  Id.

In its opinion, the state Superior Court held that McCauley's claim was meritless

because the jury did not have to believe that McCauley was guilty of rape in order

to properly find him guilty of second-degree murder.  Id.

On July 9, 1996, McCauley filed a second *pro se* PCRA petition which

re-raised the ineffectiveness/DNA testing claim that had been litigated in

connection with the first PCRA petition and unequivocally rejected on the merits by

the state trial court and state Superior Court.  Following the re-appointment of

PCRA counsel 1, McCauley filed an amendment to his second round of PCRA

claims, raising a total of 25 claims for relief from his judgment of sentence ("the

second PCRA petition"). However, PCRA counsel 1 also moved for permission to

withdraw on the grounds that the second PCRA petition both alleged that he had

been ineffective and failed to raise a claim that had not been waived and/or

previously litigated.

4

On February 26, 1997, the state trial court permitted PCRA counsel 1 to withdraw and appointed new counsel ("PCRA counsel 2").  On October 28, 1998, the state trial court appointed substitute counsel for PCRA counsel 2 ("PCRA counsel 3"). On August 5, 2002, the state trial court appointed substitute counsel for PCRA counsel 3 ("PCRA counsel 4").  (See Commonwealth v. McCauley, Docket Number: CP-34-CR-0000141-1988, Criminal Docket Sheet). No additional amendments to the second PCRA petition were ever filed.  Id.

On January 9, 2004, prior to disposition of the second PCRA petition, McCauley filed a counseled petition for DNA testing pursuant to 42 Pa.C.S.A. §9543.1.[4]  (See Commonwealth v. McCauley, Docket Number: CP-34-CR-0000141-1988, Criminal Docket Sheet).  This petition sought actual DNA testing of a single hair found by law enforcement officials on the calf of Ms. Frink after her death and introduced into evidence at trial ("the single hair").  It also sought testing of the semen removed from the victim's vaginal cavity during the autopsy

---

[4]This statutory provision, which became effective in September 2002, permits a convicted and imprisoned defendant to apply for DNA testing of specific evidence that is related to the prosecution that resulted in the conviction provided that certain prerequisites are met, including: (a) an assertion by defendant that he is actually innocent of the offense for which he was convicted; (b) a prima facie showing that the identity of or participation in the crime by the perpetrator was at issue during the trial; and (c) a prima facie showing that the DNA testing requested would, assuming exculpatory results, establish defendant's actual innocence of the offense for which he was convicted.

performed on Ms. Frink's body that was not utilized at trial.  Subsequently, the state

trial court granted PCRA counsel 4 permission to withdraw and appointed new

counsel ("PCRA counsel 5").  Id.

On December 12, 2005, at the request of the Commonwealth, the trial court

conducted a hearing on the availability of the hair and semen evidence for DNA

analysis. At the conclusion of the hearing, the court determined that: (1) the single

hair existed and would be made available for DNA testing; and (2) the semen

sample sought by McCauley was not available for testing.[5]

Pursuant to court order, the Commonwealth submitted the single hair along

with a DNA sample obtained from McCauley to DNA specialists within the

Pennsylvania State Police ("PSP") for nuclear DNA comparative analysis. Id.

Following a determination by PSP forensic scientists that there was an insufficient

amount of DNA material to conduct nuclear DNA testing, the state trial court

ordered the Commonwealth to submit the single hair to Mitotyping Technologies in

---

[5]In light of the state trial court's prior holding, affirmed by the state Superior Court, that DNA testing arguably relating to the rape of Ms. Frink could not undermine the compelling evidence of McCauley's participation in the kidnapping and robbery of Ms. Frink, and hence could not undermine McCauley's conviction for second-degree murder, its decision to require DNA testing at this point is inexplicable. Indeed, the state trial court's order for DNA testing of the hair contradicted the clear mandate of 42 Pa.C.S.A. §9543.1, which requires as a prerequisite to DNA testing a prima facie showing by the petitioner that the DNA testing requested would, assuming exculpatory results, establish his actual innocence of the offense for which he was convicted.

6

State College, Pennsylvania ("Mitotyping") for mitochondrial DNA comparative analysis. That Order was complied with and Mitotyping issued a report on April 9, 2007 indicating that McCauley was excluded as the contributor of the single hair admitted into evidence at trial ("the single hair DNA report").

On May 1, 2007, the Commonwealth delivered by mail to PCRA counsel 5 a copy of the single hair DNA report. Three months later, on August 1, 2007, McCauley filed a *pro se* "notice of pleading" which requested relief from his conviction and sentence based upon the single hair DNA report ("the fourth PCRA petition"). (See Commonwealth v. McCauley, Docket Number: CP-34-CR-0000141-1988, Criminal Docket Sheet). On August 20, 2007, PCRA counsel 5 filed a motion seeking permission to withdraw from representation of McCauley. Id.

On October 4, 2007, the state trial court held a hearing on the motion to withdraw. Id. On that same day, PCRA counsel 5 filed a PCRA petition that: (1) sought relief for his client based on the allegation that he had rendered ineffective representation by failing to file a PCRA claim within 60 days of the date that he learned of the single hair DNA report, i.e. by July 1, 2007, as required by 42 Pa.C.S.A. §9543.1(f)(1); and (2) averred that he had failed to file such a petition in

7

a timely manner because he had been informally notified by a state trooper that the PSP had independently decided to DNA test other materials obtained from the crime scene beyond those identified by McCauley ("the fifth PCRA petition").  By Order dated October 8, 2007, the state trial court granted PCRA counsel 5 permission to withdraw.  (See Commonwealth v. McCauley, Docket Number: CP-34-CR-0000141-1988, Criminal Docket Sheet).  It also: (1) denied all pending PCRA petitions on grounds of untimeliness; and (2) appointed new counsel for McCauley ("PCRA counsel 6").[6]  Id.

On December 4, 2007, PCRA counsel 6 filed a new PCRA petition alleging that the information contained within the single hair DNA report entitled him to a new trial and that the failure of PCRA counsel 5 to file a timely PCRA petition making that claim constituted a violation of McCauley's constitutional right to effective assistance of counsel ("the sixth PCRA petition").  Id.  On December 5, 2007, the Commonwealth delivered by mail to PCRA counsel 6 a copy of a report issued by the PSP Bureau of Forensic Services ("PSPBFS") dated June 28, 2007 which indicated that: (1) on the initiative of PSP, several additional items of

---

[6]This appointment occurred notwithstanding the fact that McCauley had no legal right to counsel in connection with a future sixth PCRA petition.

8

physical evidence that were not used at trial – two seminal stains collected from the victim's clothing and fingernail clippings obtained from the victim's hands – had been subjected to nuclear DNA comparative analysis; and (2)McCauley could be excluded as a possible contributor to these items ("the first PSP DNA report").

In response thereto, on December 17, 2007, PCRA counsel 6 filed a supplement to the sixth PCRA petition which incorporated the additional information obtained from the first PSP DNA report.  (See Commonwealth v. McCauley, Docket Number: CP-34-CR-0000141-1988, Criminal Docket Sheet). On December 27, 2007, PCRA counsel 6 filed a second supplement to the sixth PCRA petition which alleged that results of the first PSP DNA report constituted newly-discovered evidence that entitled McCauley to a new trial separate and distinct from his ineffectiveness claim in connection with the single hair DNA report.  Id.

On July 18, 2008, the Commonwealth delivered to PCRA counsel 6 by mail a copy of a report issued by Mitotyping dated July 8, 2008 which indicated that: (1) on the initiative of PSP, four hairs collected from the dress, jacket, and shoes of the victim that had not been introduced at trial had been subjected to mitochondrial DNA comparative analysis; and (2) McCauley could be excluded as a contributor to

these items ("the second PSP DNA report"). Subsequently, the state trial court permitted McCauley to amend his pending PCRA claim of newly-discovered evidence to encompass this additional information.

On August 22, 2008, the state trial court conducted a hearing on the claims of ineffective assistance of counsel and newly-discovered evidence contained in the sixth PCRA petition and its supplements.  (See Commonwealth v. McCauley, Docket Number: CP-34-CR-0000141-1988, Criminal Docket Sheet). Following the filing of post-hearing briefs, the state trial court issued an opinion dated August 3, 2009 and an Order dated August 6, 2009, both entered on the docket on August 12, 2009, which denied the PCRA claims in their entirety.  (Doc. 31-10 at 2-9, PCRA Court's Memorandum Opinion dated August 3, 2009).  The trial court specifically determined that McCauley was not entitled to relief because the information contained within the single hair DNA report as well as the first and second PSP DNA reports would not have changed the outcome of the trial, i.e. the jury would still have found McCauley guilty of second-degree murder.  Id.  This determination was entirely consistent with the state trial court's similar determination contained within its February 17, 1995 Opinion denying PCRA relief.

On August 17, 2009, McCauley appealed the denial of his fifth supplemented

10

PCRA petition to the state Superior Court.  (Doc. 31-11 at 2-34; Doc. 31-12 at 1-34,

copy of McCauley's appellant's brief and (Doc. 31-12 at 2-26; Doc. 31-14 at 1-27,

copy of  Commonwealth's appellee's brief).

On November 8, 2010, the Superior Court issued a non-precedential Opinion

affirming the denial of PCRA relief.  (See Doc. 31-15 at 4-8, Pennsylvania Supeior

Court Memorandum Opinion dated Nov. 8, 2010).  According to the Superior

Court:

> Appellant, in the brief in support of his appeal, sets out four questions
> for our review,[7] which can aptly be condensed to two: (1) whether a
> timely request for PCRA relief was filed once the results of the DNA
> testing were known; and (2) whether the results of the DNA testing
> constituted "exculpatory evidence that ... would have changed the
> outcome of the trial if it had been introduced."[8]

Id.  In it's Memorandum Opinion affirming the denial of Petitioner's PCRA

petition, the Superior Court found the following:

> Appellant's primary argument focuses on the effect of the results
> obtained from DNA testing of a single hair that had been found on the

---

[7]While the trial court did not issue an order requesting the filing of a concise statement of
errors complained of on appeal, as suggested by Pa.R.A.P. 1925, it did issue a memorandum opinion
in support of its decision.

[8]See: Section 9543(a)(2)(vi) of the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S.
§§9543(a)(2).

11

victim's body.[9]  At trial the Commonwealth was permitted to introduce the testimony of a "criminalist" who testified that the hair was "similar in all respects" to that of appellant's chest hair and "could have originated from the chest of the accused." N.T. February 13, 1989, pp. 659, 692. This testimony was apparently[10] used by the Commonwealth to emphasize appellant's proximity to the victim shortly before her death, and in turn was regarded as additional evidence of appellant's presence at the crime scene, as well as his participation in the rape.

Our consideration of appellant's claim -- that he is entitled to a new trial because the results of the DNA testing make clear that he did not rape the victim -- are influenced by the following salient facts: first, appellant was convicted of murder of the second degree, but the jury did not single out the offense that was the predicate element of the crime, and second, this Court, in considering appellant's prior request for PCRA relief, rejected appellant's argument that "rape was an essential element of the second degree murder count," stating:

> [T]he trial court quite properly never instructed the jury that rape alone was an essential element of second degree murder. Instead, it charged that the killing must have been committed while the "defendant was engaged in or an accomplice in the commission of…a robbery, a rape, or a kidnapping." As the lower court accurately stated, sufficient evidence was introduced at trial to warrant a finding that appellant was guilty of kidnapping and robbing the victim. Therefore, in finding him guilty of

---

[9]While Appellant also contends that the results of the additional testing of the victim's clothing is relevant, his argument concentrates on the effect of the Commonwealth's introduction into evidence of the testimony of the criminalist relating to the single foreign hair that was found on the victim's body.

[10]Since neither the opening statements nor the closing arguments of the parties at trial were transcribed, the record contains only the trial evidence. However, all parties to this appeal agree that the Commonwealth at trial utilized this evidence in the manner portrayed.

second degree murder, it was not essential that the jury
believe that he had raped the victim.

Therefore, given that the record does not support the conclusion that
appellant's conviction of murder of the second degree was solely
dependent upon his conviction of rape, and that the results of the DNA
testing did not rebut or refute the additional evidence that the
Commonwealth produced on the alternate predicate offenses of
kidnapping and robbery,[11] we find…that there is no basis upon which
to conclude that the trial court erred in its decision that appellant failed
to demonstrate that the new evidence would have "changed the
outcome" of his trial.

(See Doc. 31-15 at 4-8, Memorandum Opinion).  By Order dated November 1,

2011, the Pennsylvania State Supreme Court denied McCauley's petition for

allowance of appeal.  (Doc. 1 at 30, Order).

On July 25, 2012, McCauley filed another PCRA petition requesting a new

sentencing hearing in accordance with the United States Supreme Court's Opinion

in Miller v. Albama, 567 U.S. ——, ——, 132 S.Ct. 2455, 2460, 183 L.Ed.2d 407

(2012), prohibiting an unconstitutional automatic life-without-parole sentences for

_____

[11]It bears further emphasis that the results of the DNA testing did not contradict or refute the
two incriminating statements given by appellant to the police in 1983, in which he acknowledged his
presence during the horrible events of that night, and admitted obtaining three hundred dollars at the
end of the night from the other suspects.  Compare: Commonwealth v. Reese, 663 A.2d 206 (Pa.
Super. 1995) (Trial court granted new trial where newly obtained DNA evidence directly rebutted
the victim's identification of the defendant, and victim's identification was sole evidence that
supported the conviction, and this Court affirmed.).

juvenile murderers.[12]  <u>See</u> <u>Comm of Pa v. McCauley</u>, Docket Number: CP-34-CR-0000141-1988).  On October 31, 2012, the state trial court entered an Opinion holding that the claim would be held in abeyance pending future litigation on the question in the Pennsylvania and federal courts.

On May 29, 2013, the PCRA Court denied McCauley's PCRA petition, finding Petitioner was not entitled to relief pursuant to <u>Miller</u>.  <u>Id</u>.

On June 4, 2013, Petitioner filed a counseled notice of appeal of that determination to the Pennsylvania Superior Court, where the Court affirmed the PCRA denial on August 1, 2014.  <u>Id</u>.

On January 25, 2016, the United States Supreme Court decided <u>Montgomery v. Louisiana</u>, No. 14–280, 2016 WL 280758 (U.S.2016), which effectively determined that <u>Miller v. Alabama</u>, prohibiting under Eighth Amendment mandatory life sentences without parole for juvenile offenders, announced a new substantive constitutional rule that was retroactive on state collateral review. <u>Montgomery</u>, <u>supra</u>.

On January 27, 2016, McCauley filed his eighth PCRA petition, which is

---

[12]By Notice of Election dated December 19, 2012, Petitioner chose to have his petition ruled on as filed.  (<u>See</u> Doc. 10, Notice of Election).  Petitioner's <u>Miller</u> claim was not raised in above captioned petition for writ of habeas corpus, and as such, is not before this Court for review.

currently pending before the PCRA court.  See Comm of Pa v. McCauley, Docket

Number: CP-34-CR-0000141-1988).

**II**     **Discussion**

A state prisoner requesting habeas corpus relief pursuant to 28 U.S.C. §2254

must adhere to a statute of limitations that provides, in relevant part, as follows:

> (d)(1) A one-year period of limitations shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of - (A) the date
> on which the judgment became final by the conclusion of
> direct review or the expiration for seeking such review. . .
>
> (d)(2) The time during which a properly filed application
> for State post conviction or other collateral review with
> respect to the pertinent judgment or claim is pending shall
> not be counted toward any period of limitation under this
> subsection.

28 U.S.C. §2244(d)(1)-(2); see generally, Jones v. Morton, 195 F.3d. 153, 157 (3d

Cir. 1999).  Thus, under the plain terms of §2244(d)(1)(A), the period of time for

filing a habeas corpus petition begins to run when direct review processes are

concluded.  See Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000)("[T]he

AEDPA provides that upon conclusion of direct review of a judgment of

conviction, the one year period within which to file a federal habeas corpus petition

commences, but the running of the period is suspended for the period when state post-conviction proceedings are <u>pending</u> in any state court.")(emphasis in original); <u>Fields v. Johnson</u>, 159 F.3d 914, 916 (5ht Cir. 1998)(<u>per</u> <u>curiam</u>); <u>Hoggro v. Boone</u>, 150 F.3d 1223, 1226 (10th Cir. 1998).  It is <u>not</u> the conclusion of state post-conviction collateral review processes that starts the running of the limitations period.  <u>See</u>  <u>Bunnell v. Yukins</u>, No. 00-CV-73313, 2001 WL 278259, *2 (E.D. Mich. Feb 14, 2001)("Contrary to Petitioner's assertion, the limitations period did not begin to run anew after the completion of his post-conviction proceedings.").  Where, as here, a prisoner's conviction became final on direct review prior to the effective date of the AEDPA (April 24, 1996), the limitations period began running on April 24, 1996.  <u>Burns v. Morton</u>, 134 F.3d 109, 111  (3d Cir. 1998); <u>see</u> <u>also</u> <u>Harris</u>, 209 F.3d at 328.

As indicated above, section 2244(d)(2) operates to exclude only the time within which a "properly filed application" for post conviction relief is pending in state court.  Thus, when a petition or appeal has concluded and is no longer pending, the one (1) year statute of limitations starts to run and the time is counted. A "properly filed application" for post conviction relief under § 2244(d)(2) is one submitted according to the state's procedural requirements, such as rules governing

time and place of filing.  Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998).  The

Third Circuit Court of Appeals has defined "pending" as the time during which a

petitioner may seek discretionary state court review, whether or not such review is

sought.  Swartz v. Meyers, 204 F.3d 417 (3d Cir. 2000).  "Pending," however, does

not include the period during which a state prisoner may file a petition for writ of

certiorari in the United States Supreme Court from the denial of his state post-

conviction petition.  Stokes v. District Attorney of the County of Philadelphia, No.

99-1493, 2001 WL 387516, at *2 (3d Cir., April 17, 2001).  Likewise, the statute of

limitations is not tolled under §2244(d)(2) for the time during which a habeas

petition is pending in federal court.  Jones, 195 F.3d at 158.

In this case, the Petitioner's conviction became final on direct review prior to

the enactment of the AEDPA in April of 1996.  Thus, the clock for filing a §2254

petition began on April 24, 1996, and he had until April 24, 1997, to file a timely

habeas corpus petition.  Burns, 134 F.3d at 111.  The instant petition was not filed

until November 29, 2012, more than fifteen years after the limitations period

expired.  Thus, the petition for habeas corpus relief is clearly barred by the statute

of limitations.

Although the limitations period is tolled for the "time during which a

17

properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending," see 28 U.S.C. §2244(d)(2), none of McCauley's PCRA filings qualify for tolling the limitations period. McCauley's first PCRA petition, affirmed by the Pennsylvania Superior Court on December 15, 1995, was filed and disposed of prior to the commencement of the April 24, 1996 one-year limitations period. His second PCRA petition, although filed on July 9, 1996, within the one-year limitations period, was dismissed as untimely[13], by PCRA Court Order dated October 8, 2007, along with all of McCauley's other pending PCRA petitions pending at the time of the Court's October 8, 2007 Order. Petitioner's sixth, seventh and eighth PCRA petitions, filed on December 4, 2007, July 25, 2012 and January 27, 2016 respectively, in addition to the two most recent PCRA filings not being a part of the instant action, all are filed well after the expiration of the April 24, 1997 federal filing deadline. Thus, the April 24, 1997 filing deadline was not tolled by any "properly-filed application for state post-conviction or other collateral review." See Pace v. DiGugliemo, 125

---

[13]Even if this Court were to consider Petitioner's July 9, 1996 PCRA petition to have tolled the limitations period, with approximately 289 days of the one (1) year filing period remaining, Petitioner's PCRA petition was dismissed by the Superior Court on October 8, 2007. The instant petition was not filed until November 29, 2012, over five years later.

S. Ct. 1807 (2005).[14]  Consequently, the petition for habeas corpus relief is barred by the statute of limitations, and should be dismissed as untimely, unless the statute of limitations is subject to equitable tolling.

A habeas petitioner may also be entitled to equitable tolling of the AEDPA statute of limitations.  See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir.2003), cert. denied, 540 U.S. 921 (2003) (holding that AEDPA's time limit is subject to the doctrine of equitable tolling, a judicially crafted exception).  However, the habeas petitioner bears the burden of demonstrating his entitlement to equitable tolling and his due diligence.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Cooper v. Price,

---

[14]In Pace, 125 S. Ct. 1807 (2005), which involved Pennsylvania's post-conviction review statute, the nation's High Court ruled that an untimely PCRA petition is not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2) so as to suspend the running of the habeas corpus limitations period.  Id. at 1811.  As the Third Circuit Court of Appeals has observed, "[a]n untimely state petition for post-conviction relief cannot be 'properly filed' for purposes of §2244(d)(2)."  Satterfield v. Johnson, 434 F.3d 185, 194 (3d Cir. 2006) (citing Pace, 125 S. Ct. at 1811). The state trial court determined that McCauly's second PCRA petition, filed on July 9, 1996 and subsequent petitions, filed prior to the Court's October 8, 2007 decision, were untimely.  This determination is conclusive on the question of whether the state court applications were "properly filed" for purposes of §2244(d)(2).  See Evans v. Chavis, 126 S.Ct. 846, 850 (2006) (state court ruling that habeas petitioner's delay in seeking state court relief was unreasonable "'would be the end of the matter'") (quoting Carey v. Saffold, 536 U.S. 214, 226 (2002)); Pace, 125 S.Ct. at 1812 ("When a post conviction petition is untimely under state law, 'that is the end of the matter' for purposes of §2244(d)(2).");  Fountain v. Kyler, 420 F.3d 267, 272 n.3 (3d Cir. 2005) ("because the Superior Court found [Fountain's] second [PCRA] petition untimely, it was not 'properly filed' and thus did not serve to toll the running of the statute of limitations").  As explained in Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003), once the highest Pennsylvania court to address the matter rules that a PCRA petition is untimely, "it would be an undue interference for a federal district court to decide otherwise."

82 Fed. Appx. 258, 260 (3d Cir.2003).  Moreover, the federal habeas statute of

limitations is subject to equitable tolling only in extraordinary circumstances.  See

Merritt, 326 F.3d at 161.  Thus, while equitable tolling is permitted in state habeas

petitions under AEDPA, it is not favored.  "Courts must be sparing in their use of

equitable tolling" and only permit equitable tolling where "principles of equity

would make rigid application of a limitation period unfair."  Sistrunk v. Rozum,

674 F.3d 181, 189 (3d Cir.2012).

In Merritt, the Third Circuit Court of Appeals set forth two general

requirements for equitable tolling: "(1) that the petitioner has in some extraordinary

way been prevented from asserting his or her rights; and (2) that the petitioner has

shown that he or she exercised reasonable diligence in investigating and bringing

the claims." Merritt, 326 F.3d at 168 (internal citations and quotations omitted).

Mere excusable neglect is not sufficient. Miller v. New Jersey State Dep't of

Corrections, 145 F.3d 616, 618–19 (3d Cir.1998).  The Court of Appeals has

identified additional circumstances in which equitable tolling is warranted: (1) the

defendant has actively misled the plaintiff, (2) the plaintiff has in some

extraordinary way been prevented from asserting his rights, (3) the plaintiff has

timely asserted his rights mistakenly in the wrong forum, and (4) the claimant

20

received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that he had done everything required of him.  See Yanes v. Nish, 2009 WL 1045884, *2 (M.D. Pa.2009) (Caldwell, J.) (citing Jones, 195 F.3d at 159).

In the present matter, Petitioner does not specifically argue that he is entitled to equitable tolling and he presents no evidence to account for the delay in filing the instant federal petition for writ of habeas corpus.  Petitioner does not allege that he has been actively misled by Respondents or the Court, and the record reflects no basis for the argument.

Furthermore, it does not appear that Petitioner's rights were prevented in an extraordinary manner, he fails to allege that he exercised due diligence in investigating and bringing his claim, and he has not alleged that he asserted his rights in the wrong forum.  As such, equitable tolling is inapplicable in this matter.

**III.**  **Certificate of Appealability**.

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court

was correct in its procedural ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

In this case, reasonable jurists could not disagree that the instant petition is

time-barred.  It is statutorily barred, and neither statutory nor equitable tolling apply

to the petition.

## IV.  <u>Conclusion</u>

In light of the foregoing, the petition for writ of habeas corpus will be

**DISMISSED**, and the case will be **CLOSED**.  An appropriate order will follow.

 /s/ William J. Nealon

**United States District Judge**

Dated:    April 11, 2016

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMERSON McCAULEY, | : | CIVIL ACTION NO. 3:CV-12-2386 |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIROSA LAMAS, | : | |
| | : | |
| Respondent | : | |

## ORDER

**AND NOW, THIS 11ᵗʰ DAY OF APRIL, 2016**, for the reasons set forth in

the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  The above captioned petition for writ of habeas corpus is **DISMISSED** as untimely under the statute of limitations.  See 28 U.S.C. §2244(d).

2.  The Clerk of Court is directed to **CLOSE** this case.

3.  There is no basis for the issuance of a Certificate of Appealability.  See 28 U.S.C. §2253(c).

 /s/ William J. Nealon
**United States District Judge**